**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS GARCIA-TORO, | ) | Case No. 1:20-CV-02645-DAR |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| TIM McCONAHAY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.   INTRODUCTION

Petitioner, Carlos Garcia-Toro ("Mr. Garcia-Toro"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Garcia-Toro is serving a sentence of 47 years to life for: (1) one unspecified-felony count of aggravated murder with two firearm specifications in violation of R.C. §§ 2903.01(A), 2941.141(A), and 2941.145(A); (2) one unspecified-felony count of murder with two firearm specifications in violation of R.C. §§ 2903.02(B), 2941.141(A), and 2941.145(A); (3) two second-degree felony counts of felonious assault with two firearm specifications in violation of R.C. §§ 2903.11(A)(1), 2941.141(A), and 2941.145(A); (4) two second-degree felony counts of felonious assault with two firearm specifications in violation of R.C. §§ 2903.11(A)(2), 2941.141(A), and 2941.145(A); and (5) one first-degree felony count of attempted murder with two firearm specifications in violation of R.C. §§ 2923.02 and 2903.02(A), 2941.141(A), and 2941.145(A).

Mr. Garcia-Toro asserts seven grounds for relief. Respondent, Warden Tim McConahay ("Warden"), filed an answer/return of writ on February 5, 2021. (ECF No. 6).

1

Mr. Garcia-Toro filed a traverse on May 26, 2021. (ECF No. 10). The Warden filed a reply to Mr. Garcia-Toro's traverse on June 7, 2021. (ECF No. 13).

This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Garcia-Toro' petition. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr. Garcia-Toro's petition be DISMISSED and/or DENIED. I further recommend that this Court not grant Mr. Garcia-Toro a certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

> {¶ 2} On March 9, 2016, 22-year-old victim Jose Reyes ("Jose") was shot and killed upon leaving work shortly after 6 p.m. Jose and his 15-year-old nephew, Efrain Garcia, Jr. ("Efrain") worked at an auto shop on West 43rd Street in Cleveland, Ohio. Jose and Efrain left work together on the date of the incident because Jose was going to give Efrain a ride home. When Jose's car would not start, Efrain got out of the car to check its battery while Jose remained in the driver's seat. As Efrain started to get back into the vehicle on the passenger side, he noticed a man wearing black clothing and a ski mask approach the car. The man fired multiple shots into the car, killing Jose and shooting Efrain in the leg. The shooter fled on foot southbound on West 43rd and then turned east onto Newark Avenue, running into the yard located at 4221 Newark Avenue, Garcia-Toro's grandmother's house.

> {¶ 3} Efrain's father, Efrain Garcia, Sr. ("Efrain, Sr.") also worked at the auto shop with Jose and was still there when Jose and Efrain left that day. He heard gunshots and screams and saw Jose start to run and then collapse to the ground.

{¶ 4} Officers responded to the scene and observed one deceased victim, Jose. Officers proceeded to talk to Efrain and other people at the scene in an attempt to identify a possible suspect. Detective Timothy Entenok ("Detective Entenok") was the detective assigned to the case. He spoke with various people at the scene and eventually obtained cell phone video footage of the presumed shooter fleeing the scene after the shooting, as well as video surveillance footage from two nearby houses.

{¶ 5} Jadiris DeJesus ("Jadiris") is Efrain's mother and Jose's sister. Shortly after Jose's murder, Garcia-Toro's sister, Noemi Garcia ("Noemi") reached out to one of Jadiris's other brothers, Edwin Reyes, via Facebook Messenger. Jadiris then reached out Noemi within a week of Jose's murder. Noemi claimed to know the name of the person who killed Jose, and Jadiris made plans over Facebook Messenger to meet Noemi in person. Jadiris and Noemi met in the parking lot of a Walmart store. Jadiris recorded the half-hour conversation and subsequently sent the recording to the Cleveland Police Department.

{¶ 6} Subsequently, Garcia-Toro reached out to Jadiris himself. On one occasion, Garcia-Toro called Jadiris, and the rest of their communications took place through Facebook. Garcia-Toro sent Jadiris photos of himself, and subsequently the two video chatted on Facebook messenger. Garcia-Toro used a Facebook account under the name Gabriel Ruiz. At one point, police arrested Garcia-Toro's brother for Jose's murder; during a call with Jadiris, Garcia-Toro said police "had the wrong guy." Police subsequently secured an arrest warrant for Garcia-Toro, and he was arrested on September 14, 2017, in Columbus, Ohio. At the time, Garcia-Toro was using the alias Edwin Sayan.

(ECF No. 6-1, Exhibit 30); *State v. Garcia-Toro*, No. 107940, 2019 WL 7187508, 2019-Ohio-5336 (8th Dist. Dec. 26, 2019).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On September 25, 2017, Mr. Garcia-Toro was indicted in the Cuyahoga County Court of Common Pleas on the following offenses: (1) one unspecified-felony count of aggravated murder with two firearm specifications in violation of R.C. §§ 2903.01(A), 2941.141(A), and 2941.145(A); (2) one unspecified-felony count of murder with two firearm specifications in violation of R.C. §§ 2903.02(B), 2941.141(A), and 2941.145(A); (3) two second-degree felony counts of felonious assault with two firearm specifications in violation of R.C. §§ 2903.11(A)(1), 2941.141(A), and 2941.145(A); (4) two second-degree felony counts of

felonious assault with two firearm specifications in violation of R.C. §§ 2903.11(A)(2), 2941.141(A), and 2941.145(A); (5) one first-degree felony count of attempted murder with two firearm specifications in violation of R.C. §§ 2923.02 and 2903.02(A), 2941.141(A), and 2941.145(A); and (6) one third-degree felony count of having weapons under disability in violation of R.C. § 2923.13(A)(1). (ECF No. 6-1, Exhibit 1). On September 28, 2017, Mr. Garcia-Toro pled not guilty to all charges. (ECF No. 6-1, Exhibit 2).

On November 16, 2017, Mr. Garcia-Toro, through counsel, filed a motion for appointment of an investigator, Amanda Hubbard, as well as a motion to appoint Ms. Hubbard as a special investigator with training and experience in social media. (ECF No. 6-1, Exhibits 5-6). On November 17, 2017, Mr. Garcia-Toro filed a motion for appointment of Ms. Hubbard as an independent expert in social media. (ECF No. 6-1. Exhibit 7). On November 21, 2017, the trial court granted Mr. Garcia-Toro's motion for appointment of Ms. Hubbard as an independent expert. (ECF No. 6-1, Exhibit 8).

On January 26, 2018, the trial court held a pretrial conference. (ECF No. 6-1, Exhibit 9). At the conference, the court granted the motion of Mr. Garcia-Toro's counsel to withdraw. *Id*. The trial court also appointed the public defender and a private attorney as counsel for Mr. Garcia-Toro. *Id*.

On June 8, 2018, Mr. Garcia-Toro filed a notice of alibi pursuant to Ohio Crim.R. 12.1. (ECF No. 6-1, Exhibit 19). In the notice of alibi, Mr. Garcia-Toro stated that he was residing in New Britain, Connecticut from January 2016 through September 2016 and was in New Britain on the date of the incident.

On June 13, 2018, Mr. Garcia-Toro filed a motion *in limine* seeking to exclude Facebook posts from an account under the name of "Gabriel Ruiz," which the State contended

was an account belonging to Mr. Garcia-Toro. (ECF No. 6-1, Exhibit 11). In the motion, Mr. Garcia-Toro argued that the Facebook account was unauthenticated and could not be linked to him. Mr. Garcia-Toro also argued that posts from the account constituted inadmissible hearsay and that admission of those posts would be unduly prejudicial to him

On July 23, 2018, the State filed a motion *in limine* to exclude Ms. Hubbard as a social media expert, arguing that her proposed testimony did not satisfy the standards for expert testimony set forth in *Daubert v. Merrill Dow Pharmaceuticals*, 505 U.S. 579 (1993). (ECF No. 6-1, Exhibit 14). On August 6, 2018, the trial court granted the State's motion in part, holding that Ms. Hubbard could not state opinions regarding whether the Gabriel Ruiz Facebook account belonged to Mr. Garcia-Toro or whether the communications from that account could be authenticated. (ECF No. 6-1, Exhibit 17). The trial court held, however, that Ms. Hubbard could testify as to the facts of her investigation.

On September 25, 2018, Mr. Garcia-Toro waived his right to a jury trial on Count Eight (possession of a firearm while under disability). (ECF No. 6-1, Exhibit 20). On October 2, 2018, the trial court dismissed Count Eight without prejudice at the request of the State. (ECF No. 6-1, Exhibit 21).

The case proceeded to trial on the remaining counts. During the trial, several events occurred that Mr. Garcia-Toro contends violated his constitutional rights. First, prior to voir dire, the public defenders acting as two of Mr. Garcia-Toro's three trial attorneys informed the trial court that one of them had also represented two other individuals who had been named in police reports relating to the case. In an on-the-record colloquy with the trial judge, Mr. Garcia-Toro agreed to waive the conflict. Second, the trial court permitted testimony regarding the Gabriel Ruiz Facebook account and admitted posts from that account which

Mr. Garcia-Toro contends constituted "other acts" evidence. Third, Jadiris DeJesus ("Ms. DeJesus"), the mother of Efrain DeJesus and the sister of Jose DeJesus, testified about a meeting that she had with Mr. Garcia-Toro's sister, Noemi Garcia ("Ms. Garcia"). During that meeting, Ms. Garcia allegedly made statements implicating Mr. Garcia-Toro. Fourth, the prosecution was permitted to introduce a number of autopsy photographs of the decedent. Finally, the prosecution elicited testimony regarding the fact that Mr. Garcia-Toro had not filed his notice of alibi until June 2018, nearly a year after he was indicted.

On October 4, 2018, the jury returned a verdict of guilty on all counts except Count Eight, which was dismissed. (ECF No. 6-1, Exhibit 22). On November 2, 2018, the trial court conducted a sentencing hearing. (ECF No. 6-1, Exhibit 23). The trial court merged the convictions on Counts One through Four and the convictions on Counts Five through Seven. The trial court sentenced Mr. Garcia-Toro to a term of 30 years to life on Count One, plus three years for the firearm specifications. The trial court also sentenced Mr. Garcia-Toro to a term of 11 years on Count Five, plus three years for the firearm specifications. The trial court ordered that Mr. Garcia's sentences on Counts One and Five would run consecutively to each other and to the firearm specifications, for a total sentence of 47 years to life.

### B. Direct Appeal

On November 30, 2018, Mr. Garcia-Toro, through counsel, timely filed a notice of appeal to the Eighth District Court of Appeals. (ECF No. 6-1, Exhibit 24). In his appellate brief, Mr. Garcia-Toro raised the following assignments of error:

1. The appellant was denied conflict free counsel under the Sixth, Eighth and Fourteenth amendments of the federal Constitution and Art. I Section 10 of the Ohio Constitution.

2. The prosecutor improperly elicited testimony about the timing of the Notice of Alibi in violation of the 6th, 8th, and 14th Amendments of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

3. The State failed to authenticate the Facebook account of Gabriel Ruiz as belonging to or being utilized by the appellant in violation of the Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution and <u>State v. Gordon</u>, 2018 Ohio 2292 (par. 69-72) and it otherwise contained improper other acts evidence contrary to Evid R 404(B) and the Fourteenth Amendment.

4. Hearsay testimony and improper argument about a meeting between Jadiris DeJesus and alleged sister of appellant deprived appellant of Due Process and a fair trial under the Fourteenth Amendment of the U.S. Constitution.

5. The admission of gruesome photos of the decedent violated the Fourteenth Amendment and Evidence Rules 401-403.

6. Defense counsel were ineffective under the Sixth and Fourteenth Amendment of the federal Constitution.

7. Consecutive sentences were improper under Ohio law.

8. The evidence supporting the identity of the shooter violates the Fourteenth Amendment.

9. The convictions are against the weight of the evidence.

10. The cumulative errors in the trial denied appellant Due Process under the Ohio and federal Constitution.

(ECF No. 6-1, Exhibit 26).

On December 26, 2019, the Eighth Appellate District affirmed Mr. Garcia-Toro's sentence. (ECF No. 6-1, Exhibit 30). On February 7, 2020, Mr. Garcia-Toro, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 6-1, Exhibit 33). In his memorandum in support of jurisdiction, Mr. Garcia-Toro raised the following propositions of law:

1. The right to conflict free counsel is violated when defense counsel represents other suspects in the same homicide investigation, fail to comply with the Ohio Rules of Professional Conduct and otherwise fail to ensure counsel as guaranteed under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

2. The prosecutor improperly elicited testimony about the timing of the Notice of Alibi in violation of the 6th, 8th and 14th Amendments of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

3. The State failed to authenticate the Facebook account of Gabriel Ruiz as belonging to or being utilized by the appellant in violation of the Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution and <u>State v. Gordon</u>, 2018 Ohio 2292 (par. 69-72) and it otherwise contained improper other acts evidence contrary to Evid R 404(B) and the Fourteenth Amendment.

4. Hearsay testimony and improper argument about a meeting between Jaridis DeJesus and alleged sister of appellant deprived appellant of Due Process and a fair trial under the Sixth and Fourteenth Amendment of the U.S. Constitution.

5. The admission of gruesome photos of the decedent violated the Fourteenth Amendment and Evidence Rules 401-403.

6. Defense counsel were ineffective under the 6th and 14th Amendment of the federal Constitution.

7. The evidence supporting the identity of the shooter violates the Fourteenth Amendment.

(ECF No. 6-1, Exhibit 34). On April 14, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 6-1, Exhibit 36).

On August 27, 2020, Mr. Garcia-Toro, through counsel, filed a petition for a writ of certiorari to the United States Supreme Court. (ECF No. 6-1, Exhibit 37). In his petition, Mr. Garcia-Toro presented the following question:

1. Does the Sixth and Fourteenth Amendment of the federal Constitution guarantee the right to conflict free counsel if defense counsel represents multiple suspects in the same homicide.

*Id*. On October 13, 2020, the Supreme Court denied Mr. Garcia-Toro's petition for a writ of certiorari. (ECF No. 6-1, Exhibit 39).[1]

**C.  Federal Habeas Action**

On November 24, 2020, Mr. Garcia-Toro, through counsel, filed his 28 U.S.C. § 2254

---

[1] On January 16, 2020, Mr. Garcia-Toro, acting *pro se*, filed a post-conviction petition in the trial court pursuant to R.C. § 2953.21(A)(2). (ECF No. 6-1, Exhibit 40). In his petition, Mr. Garcia-Toro argued that his trial counsel was ineffective,  thereby depriving him of his rights protected under the 5th, 6th and 14th amendments of the United States Constitution. The State opposed Mr. Garcia-Toro's petition arguing that it was untimely under R.C. § 2953.21(A)(2) and that he had not proven a substantive claim for relief. (ECF No. 6-1, Exhibit 43). The parties have not provided any further information regarding the status of Mr. Garcia-Toro's post-conviction petition, and Mr. Garcia-Toro has not asserted any claims based on that petition.

habeas petition. (ECF No. 1). Mr. Garcia-Toro's habeas petition raises seven grounds for relief:

1. The right to conflict free counsel is violated when defense counsel represents other suspects in the same homicide investigation, fail to comply with the Ohio Rules of Professional Conduct and otherwise fail to ensure counsel as guaranteed under the Sixth and Fourteenth Amendments of the U.S. Constitution.

2. The prosecutor improperly elicited testimony about the timing of the Notice of Alibi in violation of the 6th, 8th and 14th Amendments of the U.S. Constitution.

3. The State failed to authenticate the Facebook account of Gabriel Ruiz as belonging to or being utilized by Mr. Garcia-Toro in violation of the Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution and State v. Gordon, 2018 Ohio 2292 (par. 69-72) and it otherwise contained improper other acts evidence contrary to Evid R 404(B) and the Fourteenth Amendment.

4. Hearing testimony and improper argument about a meeting between Jadiris DeJesus and alleged sister of Mr. Garcia-Toro deprived Mr. Garcia-Toro of Due Process and a fair trial under the Sixth & Fourteenth Amendment of the U.S. Constitution.

5. The admission of gruesome photos of the decedent violated the Fourteenth Amendment.

6. Defense counsel were ineffective under the Sixth and Fourteenth Amendment of the federal Constitution.

7. There is insufficient evidence that Mr. Garcia-Tore [*sic*] is the shooter and his convictions violate the Fourteenth Amendment.

*Id*. The Warden filed an answer/return of writ on February 5, 2021. (ECF No. 6). Mr. Garcia-Toro filed a traverse on May 26, 2021. (ECF No. 10). The Warden filed a reply to Mr. Garcia-Toro's traverse on June 7, 2021. (ECF No. 13).

On May 25, 2021, Mr. Garcia-Toro filed a motion to supplement or expand the record, arguing that the disputed autopsy photographs and Facebook posts, as well as trial exhibits allegedly corroborating his alibi, should be made part of the record. (ECF No. 9). On March 22, 2022, Magistrate Judge William H. Baughman, Jr. denied Mr. Garcia-Toro's motion. (ECF No. 14). On April 4, 2022, Mr. Garcia-Toro filed an objection to Magistrate Judge

Baughman's order, which remains pending.

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Garcia-Toro, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Garcia-Toro's § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d

642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

11

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine

of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by

14

AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

Mr. Garcia-Toro asserts seven grounds for relief. In his traverse, he also argues that AEDPA is unconstitutional because it violates separation of powers principles, the Suspension Clause of the Constitution, and due process. The Warden responds that the Supreme Court has repeatedly applied AEDPA without questioning its constitutionality and that numerous lower courts have upheld AEDPA's constitutionality. The Warden also argues that Mr. Garcia-Toro has procedurally defaulted on several of his grounds of error, and that each of them fails on the merits. I will first address Mr. Garcia-Toro's challenge to AEDPA's constitutionality and then consider each of his assignments of error in turn.

### A.  Constitutionality of AEDPA

While "the Sixth Circuit ha[s] not addressed the specific question of AEDPA's constitutionality," "other circuits and district courts within the Sixth Circuit ha[ve] rejected" such challenges. *Collins v. Jenkins*, No. 3:17-cv-02299, 2018 WL 4473371, at *7 (N.D. Ohio May 25, 2018), *report and recommendation adopted sub nom*, 2018 WL 3490735; *see also Hudson v. Cook*, No. 1:14-cv-2069, 2018 WL 2041776, at *1 (N.D. Ohio May 2, 2018). Indeed, "there is universal agreement among each circuit that AEDPA deference is

15

constitutional." *Betts v. Tibbals*, No. 1:11-cv-01107, 2014 WL 4794530, at *3 (N.D. Ohio
Sept. 24, 2014). Moreover, "the Supreme Court has upheld the application of AEDPA in a
multitude of cases, tacitly assuming its constitutionality." *Collins v. Shoop*, No. 18-3766,
2018 WL 11298595, at *3 (6th Cir. Dec. 17, 2018) (quoting *Irons v. Carey*, 505 F.3d 846,
855 (9th Cir. 2007)). I therefore recommend that the Court reject Mr. Garcia-Toro's argument
that AEDPA is unconstitutional.

### B.  Ground One: Violation of Right to Conflict-Free Counsel

In his first ground, Mr. Garcia-Toro argues that he was denied the right to counsel in
violation of the Sixth and Fourteenth Amendments because his trial counsel was unavoidably
conflicted in light of their prior representation of other suspects in the same incident.
Specifically, Mr. Garcia-Toro argues that two of the three attorneys representing him at trial
worked for the public defender's office, where one of them represented two other individuals,
Angel and Andrew Lopez, who were also suspects in the case. Mr. Garcia-Toro argues that,
because the identity of the shooter was the crucial issue in the case, his trial counsel had a
constitutional obligation to point to evidence suggesting that one of the Lopezes was the
shooter rather than Mr. Garcia-Toro. Mr. Garcia-Toro also argues that the conflict of interest
prevented Mr. Garcia-Toro's counsel from doing so as effectively or as forcefully as effective
advocacy required.

"Where a constitutional right to counsel exists, [the Supreme Court's] Sixth
Amendment cases hold that there is a correlative right to representation that is free from
conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*,
466 U.S. 335 (1980); *Holloway v. Arkansas*, 435 U.S. 475 (1978)). If a defendant's counsel
is operating under a conflict of interest, the attorney's actions may constitute ineffective
assistance of counsel under the Sixth Amendment in violation of *Strickland v. Washington*,

466 U.S. 668 (1984). *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Gillard v. Mitchell*, 445 F.3d 883, 891 (6th Cir. 2006). "To prevail on a claim that he was denied his right to conflict-free counsel, a defendant must demonstrate 'an actual conflict of interest.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 844 (6th Cir. 2017) (quoting *Wood*, 540 U.S. at 273). "An 'actual conflict,' for purposes of the Sixth Amendment is 'a conflict of interest that adversely affects counsel's performance.'" *Id.* (quoting *Mickens*, 535 U.S. at 172 n.5 (1981)). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350.

Under *Strickland*, a petitioner must make two showings. First, the petitioner "must show that his counsel's performance was deficient, which 'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 687). Second, the petitioner "must show that the deficient performance prejudiced the defense[,] . . . [which] requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Gillard*, 445 F.3d at 890 (quoting *Strickland*, 466 U.S. at 687) (alterations in original).

"[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. To demonstrate an actual conflict of interest, the petitioner must show "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350). In *Mickens*, the Supreme Court held that it is only clearly established that prejudice is presumed where an attorney concurrently represents two or more clients who have conflicting interests. 535 U.S. at 175. "The Supreme Court explicitly left open the question of whether

17

the *Sullivan* standard applied to a conflict of interest due to successive representation." *Stewart v. Wolfenbarger*, 468 F.3d 338, 350-51 (6th Cir. 2006).

As a result, it is necessary to first determine whether the public defenders were simultaneously representing Mr. Garcia-Toro and the Lopezes. Mr. Garcia-Toro argues that they were. The Eighth Appellate District, however, found to the contrary. (*See* ECF No. 6-1, Exhibit 30, ¶ 19) (noting that one of the public defenders representing Mr. Garcia-Toro "had previously represented two individuals named in discovery documents in this case"). The trial court similarly stated on the record that the public defender had "previously defended" the Lopezes, an assertion that the public defender did not dispute. (*See* ECF No. 6-2, Tr. 125:17-126:5). I must defer to the Ohio courts' factual finding that this case involves successive, rather than simultaneous, representation, *see Burt*, 571 U.S. at 18, and Mr. Garcia-Toro has not rebutted those findings with clear and convincing evidence. And "[b]ecause the Supreme Court has not held that successive representation gives rise to a presumption of prejudice, the *Sullivan* presumption does not control this habeas case." *Gillard*, 445 F.3d at 891.

Although the *Sullivan* presumption does not apply, Mr. Garcia-Toro can still be entitled to habeas relief if he demonstrates both that: (1) his counsel "made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment"; and (2) he was prejudiced by his counsel's ineffectiveness, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88. The Eighth Appellate District held that Mr. Garcia-Toro had not met his burden, reasoning as follows:

> One of the assistant Cuyahoga County public defenders representing Garcia-Toro at trial had previously represented two individuals named in discovery documents in this case, and another attorney worked in the same office as the assistant public defender. Nothing in the record indicates that this representation was in any way connected to

18

the murder of Jose Reyes. Garcia-Toro's argument attempts to call into question steps taken or not taken by defense counsel in light of this alleged conflict, such as introducing evidence that these two individuals were suspects, issuing subpoenas, and insufficiently advising Garcia-Toro. None of these attempts are successful in establishing either element of an actual conflict. The record reflects that some of the state's witnesses were cross-examined as to whether they were familiar with the names of the two individuals the assistant public defender had previously represented, and this line of questioning did not lead to any relevant testimony. Further, one of Garcia-Toro's three attorneys was unaffected by any alleged actual or potential conflict of interest, and we have no reason to conclude that he was unable to properly advise Garcia-Toro related to this issue.

(ECF No. 6-1, Exhibit 30, ¶ 19).

The Eighth Appellate District's holding was not contrary to, or an unreasonable application of, clearly established Supreme Court law, and Mr. Garcia-Toro thus has not established that his counsel was constitutionally ineffective as a result of any alleged conflict.

Even if Mr. Garcia-Toro could demonstrate an actual conflict that prejudiced him, it is well-settled that a defendant may waive a conflict of interest. *See United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). The Eighth Appellate District found that Mr. Garcia-Toro had expressly waived any conflict here:

{¶ 20} Finally, even to the extent that there may have been a potential conflict of interest, the record contains a valid waiver by Garcia-Toro of his right to conflict-free counsel. In order to establish an effective waiver of this right, the trial court must make a "sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right." *State v. Ricks*, 8th Dist. Cuyahoga Nos. 101198 and 101199, 2015-Ohio-414, ¶ 12, citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. As we discussed above, the court's inquiry here was sufficient.

{¶ 21} The court confirmed that Garcia-Toro understood his attorneys' summary of the potential issue and the discussions they had had with him and with their supervisor. The court confirmed that Garcia-Toro understood the implications of a potential conflict of interest on his attorneys' representation of him, that he had an opportunity to discuss the issue with counsel, that he would be giving up any potential legal issue with respect to the alleged conflict, that he was not threatened or promised anything in connection with his waiver, and that he fully understood the waiver and did not have any questions. Therefore, the record reflects a valid waiver by Garcia-Toro. For these reasons, Garcia-Toro's first assignment of error is overruled.

19

(ECF No. 6-1, Exhibit 30).

The Eight Appellate District's conclusion is well-supported by the record. A review of the trial transcript demonstrates that the trial court engaged in a lengthy colloquy with Mr. Garcia-Toro regarding the potential conflict and confirmed that Mr. Garcia-Toro was expressly waiving the conflict. (ECF No. 6-2, Tr. 127:5-130:14). Thus, while Mr. Garcia-Toro argues that he was never informed of his right to conflict-free counsel, the Eighth Appellate District reasonably concluded that Mr. Garcia-Toro knowingly and intelligently waived any potential conflict. *See United States v. Collins*, 434 F. App'x 434, 441 (6th Cir. 2011) (holding that defendant validly waived conflict where she "was informed of the potential conflict by the government's motion, was further informed of the potential through a hearing, and—despite these events—still actively fought to keep her counsel"); *Brooks v. Bobby*, No. 1:02CV1416, 2006 WL 2456494, at *11 (N.D. Ohio Aug. 22, 2006) (holding that trial judge did not err in accepting petitioner's conflict waiver where trial judge "specifically inquired as to the Petitioner and his co-defendant understood the potential for conflicts, and both answered 'yes'").

It is true that a defendant's waiver does not necessarily bind the courts. *See Wheat v. United States*, 486 U.S. 153, 162 (1988). Instead, the validity of a waiver depends on the facts and circumstances of the case. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981). Here, however, the Eighth Appellate District did not err in finding that Mr. Garcia-Toro's waiver was valid given his extensive colloquy with the trial court and uncertain nature of a defense centered around identifying the Lopezes as potential perpetrators. *See Collins*, 434 F. App'x at 441 (holding that district court did not abuse discretion in permitting defendant to waive conflict where "[w]hile implicating [spouse] was one possible defense, it was not required or even necessarily the best defense"); *Bray v. Cason*, 375 F. App'x 466, 472 (6th Cir. 2010)

20

(holding that state court did not err in accepting defendant's waiver of conflict where trial court informed defendant of possible conflict and confirmed defendant had discussed the matter with counsel). I thus recommend that the Court deny Mr. Garcia-Toro's first ground for relief.

### C.  Ground Two: Testimony Regarding Notice of Alibi

In his second ground for relief, Mr. Garcia-Toro argues that the prosecution improperly elicited testimony about the timing of his notice of alibi in violation of the Sixth and Fourteenth Amendments.[2] The Warden argues both that Mr. Garcia-Toro procedurally defaulted on this claim because his trial counsel did not contemporaneously object to the testimony and that the claim fails on the merits. I agree with the Warden on both counts.

#### 1.  Procedural Default

Ohio adheres to the "contemporaneous objection" rule, pursuant to which a defendant who fails to contemporaneously object to an alleged trial error waives appellate review of the issue unless the defendant demonstrates plain error. *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). As the Sixth Circuit has repeatedly held, "Ohio's contemporaneous objection rule is an independent and adequate ground to foreclose relief absent a showing of cause and prejudice." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the 'firmly-established Ohio contemporaneous objection rule' is 'an independent and adequate state

---

[2] In his list of assignments of error, Mr. Garcia-Toro also suggests that the State's elicitation of testimony regarding his notice of alibi violates the Eighth Amendment. However, Mr. Garcia-Toro has not set forth any facts supporting an Eighth Amendment violation and does not make any argument with respect to the Eighth Amendment. Accordingly, Mr. Garcia-Toro has waived his Eighth Amendment argument. *See* Rule 2(c) of Rules Governing Section 2254 Cases in the United States District Courts (requiring petition to specify facts supporting each ground for relief); *Petefish v. Richland Corr. Inst.*, No. 4:13CV1295, 2015 WL 751027, at *28 n.8 (Feb. 23, 2015) ("It is not this Court's function to find law or evidence to support [a petitioner's] undeveloped and conclusory 'argument'").

ground' of decision.") (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

I agree with the Warden that the Eighth Appellate District enforced the contemporaneous objection rule here. The Eighth Appellate District expressly held that, because Mr. Garcia-Toro failed to object to the prosecution's statements during the sentencing hearing, it was limiting its review to plain error review. (ECF No. 6-1, Exhibit 30, ¶ 23). The Ohio Supreme Court then declined to accept jurisdiction over Mr. Garcia-Toro's appeal without comment, leaving the Eighth Appellate District's ruling as the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 805.

It is well-settled that an Ohio court enforces the contemporaneous objection rule for purposes of *Maupin* when it conducts plain error review on appeal. *See Wickline*, 319 F.3d at 823 n.5 ("The Ohio Supreme Court's review for plain error constitutes enforcement of this procedural rule, which this court has recognized as an adequate and independent state ground barring federal habeas review."); *Dudas v. Gansheimer*, No. 1:09CV1177, 2010 WL 9038323, at *15 (N.D. Ohio Oct. 1, 2010), *report and recommendation adopted*, 2012 WL 5931783 ("The court proceeded to conduct a plain error analysis, but a plain error review by a state court does not constitute a waiver of the state court's procedural bar."). Mr. Garcia-Toro has therefore procedurally defaulted on Ground Two.

Mr. Garcia-Toro's procedural default can be excused if he can demonstrate either both cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. However, Mr. Garcia-Toro does not argue that his procedural default should be excused. Instead, he argues in his traverse only that "all issues have been properly preserved for this Court's review." (ECF No. 10 at 28). I disagree, and I thus recommend that the Court dismiss or deny Mr. Garcia-Toro's second ground for

relief because it is procedurally defaulted.

### 2. Merits

Alternatively, I recommend that the Court deny Mr. Garcia-Toro's second ground for relief on the merits. Mr. Garcia-Toro's prosecutorial claim revolves around the following exchange that the prosecution had with one of the State's witnesses, Detective Entenok:

> Q.    During the course of your investigation you received phone calls from people that might potentially have information, is that fair?
>
> A.    Yes.
>
> Q.    Did you ever receive a phone call from anyone claiming that they knew the defendant was not in Cleveland, Ohio, at the time of March 9, 2016?
>
> A.    No.
>
> Q.    When is the first time you heard an alleged alibi?
>
> A.    June of this year.
>
> Q.    From a court filing?
>
> A.    Yes.

(ECF No. 6-2, Trial Tr. 1328:3-13).

Mr. Garcia-Toro argues that the prosecution engaged in misconduct by eliciting testimony from Detective Entenok regarding the timing of his notice of alibi because the timing is not probative of guilt or innocence.

"Prosecutorial misconduct can merit habeas relief only if the prosecutor's remarks render the trial so unfair as to be a denial of due process." *Moore v. Mitchell*, 708 F.3d 760, 799 (6th Cir. 2013). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493

U.S. 342, 352 (1990). Moreover, the prosecution's conduct "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). In addition, a harmless error analysis applies to prosecutorial misconduct claims on habeas review. *See Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

The Eighth Appellate District held that it was improper for the prosecution to elicit testimony regarding the timing of Mr. Garcia-Toro's notice of alibi because "the timing of the filing of a notice of alibi is not probative of guilt and is tantamount to adducing evidence about the defendant's silence." (ECF No. 6-1, Exhibit 30, ¶ 24). The Warden does not argue that the prosecution's line of questioning was proper, and I will assume that the prosecution engaged in misconduct by eliciting testimony regarding the timing of Mr. Garcia-Toro's alibi.

However, Mr. Garcia-Toro must also show that the prosecution's misconduct so infected his trial as to render it fundamentally unfair. The Eighth Appellate District held that it had not, reasoning as follows:

> The prosecutor's references to Garcia-Toro's notice of alibi was limited to a very brief exchange, and neither the prosecutor nor Detective Entenok made any inferences or further comments regarding the notice of alibi. Further, Garcia-Toro's alibi witness was able to provide thorough testimony as to the alibi defense. Finally, in light of the other evidence presented against Garcia-Toro, we cannot conclude that this brief exchange affected a substantial right or constituted a manifest miscarriage of justice. Therefore, Garcia-Toro's second assignment of error is overruled.

(ECF No. 6-1, Exhibit 30, ¶ 25).

A federal court must give deference to a state court's determination of a prosecutorial misconduct claim so long as the state court actually adjudicated the merits of the claim. *See Bates*, 402 F.3d at 641; *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Mr. Garcia-Toro argues that no deference is warranted here. However, while the Eighth Appellate District

conducted a plain error review, its determination can nonetheless be entitled to AEDPA deference if the court conducted "any reasoned elaboration of an issue under federal law." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (quoting *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009)); *see also Hunter v. Office of the Ohio Attorney General*, Nos. 19-3515/3550, 2022 WL 154341, at \*2 (6th Cir. Jan. 18, 2022) ("Following *Stewart v. Trierweiler*, AEDPA deference 'applies to a state court's plain-error analysis if it 'conducts any reasoned elaboration of an issue under federal law.'") (quoting *Stewart*, 867 F.3d at 638). I conclude that the Eighth Appellate District conducted a reasoned elaboration under federal law such that its determination is entitled to deference.

Because the Eighth Appellate District's determination is entitled to deference, habeas relief is warranted only if "no fair-minded jurist could disagree" with the Eighth Appellate District's assessment. *Harrington*, 562 U.S. at 101. Applying that deference, fairminded jurists could agree with the Eighth Appellate District's ruling. As the Eighth Appellate District held, the relevant testimony consisted of a brief exchange between the prosecution and Detective Entenok during which Detective Entenok testified only to when he learned of Mr. Garcia-Toro's alibi. The prosecution did not make any direct statements suggesting that Mr. Garcia-Toro's alibi was fabricated because he had not proffered it sooner. Mr. Garcia-Toro also does not point to portions of the record indicating that the prosecution referenced Detective Entenok's testimony during closing argument or at any other point in the trial. Given the limited nature of the testimony at issue, and applying appropriate deference to the Eighth Appellate District, Mr. Garcia-Toro has not demonstrated that the testimony regarding his notice of alibi rendered his trial fundamentally unfair. I therefore recommend that the Court alternatively deny Mr. Garcia-Toro's second ground for relief on the merits.

25

**D.  Ground Three: Admission of Facebook Posts**

In Ground Three, Mr. Garcia-Toro argues that his Sixth and Fourteenth Amendment rights[3] were violated because (1) the State failed to authenticate whether the "Gabriel Ruiz" Facebook account belonged to him; and (2) the Facebook posts admitted into evidence constituted improper "other acts" evidence. The Warden responds that Mr. Garcia-Toro procedurally defaulted on the second portion of this claim, and that the claim fails on the merits in its entirety. The Warden's arguments are well-taken.

### 1. *Procedural Default*

The Warden concedes that Mr. Garcia-Toro presented his authentication challenge in state court and that the Ohio courts addressed that issue on the merits. The Warden argues, however, that Mr. Garcia-Toro failed to contemporaneously object to the alleged other acts evidence and that the Ohio courts applied a procedural bar, such that Mr. Garcia-Toro has procedurally defaulted on that portion of his claim. The Warden is correct. As the Eighth Appellate District held, "Unlike the foregoing authentication issue, which was thoroughly addressed during trial, Garcia-Toro did not object to any of the [other acts] evidence he now argues violates Evid.R. 404(B). Therefore, we are confined to plain error review." (ECF No. 6-1, Exhibit 30, ¶ 32). The Ohio Supreme Court then declined to accept jurisdiction over Mr. Garcia-Toro's appeal, leaving the Eighth Appellate District's opinion as the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 805.

As set forth above, because the Eighth Appellate District applied plain error review, Mr. Garcia-Toro has procedurally defaulted on the "other acts" portion of Ground Three.

---

[3] In his list of assignments of error, Mr. Garcia-Toro asserts that the introduction of the Facebook posts violated his Eighth Amendment rights as well. Again, however, he does not make any argument with respect to the Eighth Amendment or cite any supporting facts. As a result, he has waived any argument based on the Eighth Amendment.

And, for the reasons set forth above, Mr. Garcia-Toro has not demonstrated cause and prejudice to excuse the default. I therefore recommend that the Court dismiss or deny as procedurally defaulted the portion of Ground Three alleging that admission of the Facebook posts violated due process because the posts constituted other acts evidence.

### 2. Merits

Alternatively, I recommend that the Court deny Mr. Garcia-Toro's third ground for relief on the merits in its entirety. As a general rule, an error of state law in the admissibility of evidence does not constitute an infringement of a right guaranteed under the United States Constitution, and it is not cognizable in habeas corpus. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000). However, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id*. at 512; *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

The Sixth Circuit has cautioned that "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)); *see also Dowling*, 493 U.S. at 352-53; *Burger v. Woods*, 515 F. App'x 507, 509-10 (6th Cir. 2013) ("A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb"). Under this standard, state court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

Beyond demonstrating the error resulted in a denial of fundamental fairness, a petitioner seeking habeas relief based on a state-court evidentiary ruling must also establish

"actual prejudice" from the admission of the allegedly improper evidence. *Clemmons v. Sowders*, 34 F.3d 352, 357-58 (6th Cir. 1994); s*ee also Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) (quoting *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (petitioner must show that admission of improper evidence is "material in the sense of a crucial, critical highly significant factor").

### 1.  *Authentication of Facebook Account*

Mr. Garcia-Toro first argues that his due process rights were violated when the prosecution was allowed to present testimony that the Gabriel Ruiz Facebook account belonged to him. The Eighth Appellate District rejected Mr. Garcia-Toro's argument on the merits, holding as follows:

> {¶ 27} Ohio courts have acknowledged that social media evidence creates authentication concerns because, among other things, "'anyone can create a fictitious [Facebook] account and masquerade under another person's name' and, consequently, '[t]he potential for fabricating or tampering with electronically stored information on a social networking site is high.'" *State v. Gordon*, 2018-Ohio-2292, 114 N.E.3d 345, ¶ 69 (8th Dist.), quoting *State v. Inkton*, 2016-Ohio-693, 60 N.E.3d 616, ¶ 85-86 (8th Dist.), quoting *State v. Gibson*, 6th Dist. Lucas Nos. L-13-1222 and L-13-1223, 2015-Ohio-1679, ¶ 35. While the parties in this case agree that this challenge exists, they disagree as to the significance of this issue related to the evidence against Garcia-Toro.

> {¶ 28} The admission of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Therefore, our review is limited to determining whether the trial court's admission of evidence was unreasonable, arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240.

> {¶ 29} Here, the state presented evidence that an individual communicated with Jose's siblings using a Facebook account under the name "Gabriel Ruiz" and admitted to having murdered Jose. This evidence took the form of screenshots of text communications, as well as screenshots of video chats. Garcia-Toro argues that the state was required to present additional evidence going to the identification of the user of the Gabriel Ruiz Facebook account, including independent evidence linking Garcia-Toro to the account, before the evidence was put before the factfinder. In

28

response, the state argues that it presented sufficient evidence to authenticate the Facebook evidence pursuant to Evid.R. 901(A), and beyond that, the issue of who created the Gabriel Ruiz Facebook account was a question to be resolved by the factfinder.

{¶ 30} Evid.R. 901(A) provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

This authentication standard is liberal and may be satisfied by either circumstantial or direct evidence sufficient for the trier of fact to conclude that the evidence is what its proponent claims it to be. *Inkton*, 2016-Ohio-693, 60 N.E.3d 616, at ¶ 73, citing *State v. Pruitt*, 8th Dist. Cuyahoga No. 98080, 2012-Ohio-5418, ¶ 11. In this case, Detective Entenok testified that he obtained the Facebook evidence pursuant to a search warrant served on Facebook and personally reviewed the documents. Ohio courts have found similar authentication evidence sufficient to meet the standard in Evid.R. 901(A). Inkton; *State v. Howard*, 1st Dist. Hamilton No. C-170453, 2018-Ohio-3692. Therefore, we find the Facebook evidence was properly authenticated.

{¶ 31} As to the identity of the Facebook account's user, the state presented evidence from J.D. and Jadiris identifying Garcia-Toro as the person with whom they communicated on the Gabriel Ruiz Facebook account. This includes their identification of Garcia-Toro in a screenshot of a video chat between the Gabriel Ruiz Facebook account and J.D.'s Facebook account. This evidence was properly presented to the jury, and the jury was tasked with assessing the weight and credibility of this evidence. In light of the foregoing, we find no abuse of discretion in the trial court's admission of social media evidence.

(ECF No. 6-1, Exhibit 30).

I must defer to the Eighth Appellate District's determination that the Facebook account was properly authenticated under Ohio law. *See Allen*, 845 F.2d at 614. Even if the Facebook account was not properly authenticated, Mr. Garcia-Toro has not shown that any error violated fundamental fairness given the witness testimony linking him to the account. *See Gordon v. Noble*, No. 1:19 CV 1106, 2022 WL 4645880, at *19 (N.D. Ohio Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 4599230 (holding that admission of Facebook photograph was not "so egregious that it resulted in a denial of fundamental fairness"). I therefore recommend that the Court deny this portion of Ground Three and/or

dismiss it as non-cognizable.

### 2. Admission of Alleged "Other Acts" Evidence

Mr. Garcia-Toro also argues that admission of the Facebook posts into evidence violated his due process rights because those posts constituted inadmissible "other acts" evidence. However, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d at 512. The absence of clearly established Supreme Court precedent is fatal to Mr. Garcia-Toro's claim.

In addition, admission of "other acts" evidence does not violate due process when such evidence is admitted for a purpose other than proving the defendant's propensity to commit the crime. *See Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (holding that admission of alleged "other acts" evidence did not violate fundamental fairness where evidence was "highly probative of the murderer's identity"); *Plevyak v. Miller*, No. 4:16 CV 218, 2017 WL 4838411, at *12 (N.D. Ohio July 25, 2017), *report and recommendation adopted*, 2017 WL 4792342 ("the state appellate court's ruling that the other acts evidence was admissible to provide background was not so fundamentally unfair that it violated Plevyak's due process rights").

Here, the Eighth Appellate District held that the Facebook posts were properly admitted to prove his identity and the absence of mistake, stating as follows:

> Evid.R. 404(B) prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity with that character. The rule goes on to provide that such evidence may be admissible for other purposes, such as proof of motive, identity, or absence of mistake or accident. The evidence Garcia-Toro now challenges all appear to directly relate to Jose's murder and could have been introduced in order to prove his identity and the absence of mistake or accident, which are proper purposes for this evidence. Therefore, we find no plain error. Garcia-Toro's third assignment of error is overruled.

(ECF No. 6-1, Exhibit 30, ¶ 33).

The Eighth Appellate District did not act contrary to or misapply clearly established Supreme Court precedent in holding that the alleged "other acts" evidence was properly admitted for other purposes. I therefore alternatively recommend that the Court deny this portion of Ground Three on the merits or dismiss it as non-cognizable.

### E.  Ground Four: Admission of Alleged Hearsay

In Ground Four, Mr. Garcia-Toro argues that his due process rights were violated because Ms. DeJesus was permitted to testify to a meeting that she had with Ms. Garcia. Mr. Garcia-Toro argues that Ms. DeJesus' testimony constituted inadmissible hearsay and that its admission violated his rights under the Confrontation Clause of the Sixth Amendment.  The Warden argues that Mr. Garcia-Toro procedurally defaulted on this claim and that it fails on the merits.

#### 1.  *Procedural Default*

The Warden argues that, as with Mr. Garcia-Toro's second and third grounds, he procedurally defaulted on Ground Four because he did not object to Ms. DeJesus' testimony at trial and the Eighth Appellate District applied the contemporaneous objection rule. The Eighth Appellate district did not apply the contemporaneous objection rule to Ground Four, however, but instead proceeded directly to the merits. (ECF No. 6-1, Exhibit 30, ¶¶ 34-36). Because the Ohio courts did not apply a procedural bar, Mr. Garcia-Toro has not defaulted on this claim. *See Harris v. Reed*, 489 U.S.255, 263 (1989) (holding that "a procedural default does not bar consideration of a federal claim on either direct or habeas review" unless the state court "'clearly and expressly' states that its judgment rests on a state procedural bar") (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).

### 2. *Merits*

Mr. Garcia-Toro argues that his constitutional rights were violated when the trial court permitted Ms. DeJesus to offer alleged hearsay testimony regarding a conversation she had with Ms. Garcia. To the extent Mr. Garcia-Toro is challenging the Eighth Appellate District's determination that Mr. DeJesus' statements were not hearsay, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Thus, Mr. Garcia-Toro's argument that Ms. DeJesus' testimony constituted inadmissible hearsay is not cognizable on federal habeas review. *See Knoefel v. Phillips*, No. 1:20-cv-1529, 2021 WL 8894449, at *27 (N.D. Ohio Apr. 23, 2021), *report and recommendation adopted*, 2022 WL 2193442 (holding that the question of whether testimony is hearsay is a matter of state law that is not cognizable on federal habeas review).

Mr. Garcia-Toro also argues that the admission of Ms. DeJesus' testimony violated the Confrontation Clause of the Sixth Amendment. While the Eighth Appellate District addressed Mr. Garcia-Toro's hearsay argument on the merits, it did not address whether admission of Ms. DeJesus' testimony violated the Confrontation Clause. Accordingly, I will review Mr. Garcia-Toro's Confrontation Clause claim *de novo*. *See Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (holding that a federal court reviews a claim *de novo* if the claim was not adjudicated on the merits in state court).[4]

The Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has "held that this bedrock procedural guarantee applies to both federal and state prosecutions."

---

[4] It is not clear that Mr. Garcia-Toro presented his challenge to Ms. DeJesus' testimony as a Confrontation Clause argument before the Eighth Appellate District. However, the Warden has not argued that Mr. Garcia-Toro procedurally defaulted on his Confrontation Clause argument on that basis, so I will address the merits of the argument.

*Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause also applies both to in-court testimony and to out-of-court statements introduced at trial. *Id*. at 50-51.

In *Crawford*, the Supreme Court held that the Confrontation Clause applies only to statements that are "testimonial," meaning statements that involve "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). If hearsay evidence is testimonial, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id*. at 68. Thus, after *Crawford*, "[t]he Confrontation Clause bars the admission of out-of-court testimonial statements made by an unavailable witness when those statements are offered to prove the truth of the matter asserted and when the defendant did not have a previous opportunity to cross-examine the witness." *Berry v, Capello*, 576 F. App'x 579, 585 (6th Cir. 2014) (citing *Crawford*, 541 U.S. at 53-54).

Mr. Garcia-Toro argues that his rights under the Confrontation Clause were violated because Ms. DeJesus testified regarding a conversation she had with Ms. Garcia. But as the Eighth Appellate District held, Ms. DeJesus did not offer any of Ms. Garcia's out-of-court statements for the truth of the matter asserted. Instead, the prosecution specifically instructed Ms. DeJesus that she could not testify regarding what anyone told her other than Mr. Garcia-Toro. (ECF No. 6-2, Trial Tr. 949:4-17). Ms. DeJesus then testified about the fact of her meeting with Ms. Garcia and the circumstances surrounding that meeting. (*Id*. at 953:21-956:17). However, she did not offer any testimony regarding what Ms. Garcia told her during that conversation. Because non-hearsay testimony "does not implicate any Sixth Amendment concerns such as those raised in *Crawford*," *United States v. Kenney*, 218 F. App'x 380, 385

(6th Cir. 2007), Mr. Garcia-Toro's Confrontation Clause argument fails.

Even if Ms. DeJesus had provided hearsay testimony regarding what Ms. Garcia told her, however, Mr. Garcia-Toro has not demonstrated that his sister's statements were "testimonial" such that they were subject to the Confrontation Clause. A statement is not "testimonial" where the declarant "simply was not acting as a *witness*" and "was not *testifying*." *Davis v. Washington*, 547 U.S. 813, 828 (2006) (emphasis in original). Testimonial statements are "directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Id*. at 826. "In deciding whether a statement is testimonial, the court asks 'whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate [her] statement being used against the accused in investigating and prosecuting the crime.'" *Berry*, 576 F. App'x at 585 (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)).

The Supreme Court has never held that an out-of-court statement made by a private party to another private party in the circumstances presented here is testimonial other *Crawford*. To the contrary, the Supreme Court noted in *Crawford* that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51; *see also Ohio v. Clark*, 576 U.S. 237, 246 (2015) (noting that while statements to individuals other than law enforcement officers are not categorically excluded from the Sixth Amendment's reach, they are "much less likely to be testimonial than statements to law enforcement officers"). Because it is not clearly established that Ms. Garcia's purported statements were testimonial, the admission of those statements does not entitle Mr. Garcia-Toro to habeas relief. I therefore

34

recommend that the Court deny Mr. Garcia-Toro's fourth assignment of error.

### F. Ground Five: Admission of Photographs

In Ground Five, Mr. Garcia-Toro alleges that his due process rights were violated when gruesome photographs of the victim were admitted into evidence. The Warden argues that Mr. Garcia-Toro procedurally defaulted on Ground Five by failing to contemporaneously object to their admission and that introduction of the photographs did not violate his due process rights. I agree with the Warden on both arguments.

#### 1. Procedural Default

While the Eighth Appellate District did not expressly reference the contemporaneous objection rule in connection with Ground Five, it did limit its review to plain error. (*See* ECF No. 6-1, Exhibit 30, ¶ 38) (holding that "we do not find plain error" in the admission of the autopsy photographs). Because the Eighth Appellate District applied a procedural bar and confined itself to plain error review, Mr. Garcia-Toro has procedurally defaulted on the claim. For the reasons set forth above, Mr. Garcia-Toro also has not demonstrated cause or prejudice to excuse the default or a fundamental miscarriage of justice. As a result, I recommend that the Court dismiss or deny Ground Five as procedurally defaulted.

#### 2. Merits

Alternatively, Mr. Garcia-Toro's claim fails on the merits. As noted above, a court may grant habeas relief for an alleged evidentiary error only where the error is so significant as to undermine the fundamental fairness of the trial. *See Bugh*, 329 F.3d at 512. However, "[h]abeas courts routinely have denied claims that the admission of 'gruesome' photographs of victims or crime scenes resulted in the denial of fundamental fairness." *Phillips v. LaRose*, No. 5:13CV693, 2016 WL 11260328, at *10 (N.D. Ohio May 6, 2016) (citing cases)*, report and recommendation adopted in part, overruled in part*, 2017 WL 5562073; *see also*

*Heckathorn v. Baldauf*, No. 4:20 CV 2820, 2022 WL 171540, at *4 (N.D. Ohio Jan. 19, 2022)

("Fundamental fairness challenges based on the admission of graphic photographs at trial are

not supported by clearly established Supreme Court law.").

Moreover, "the Sixth Circuit repeatedly has held that a trial court's admission of

gruesome photographs of a murdered victim does not violate the Constitution when there is

some legitimate evidentiary purpose for demonstrating the nature of the injuries." *Mack v.*

*Bradshaw*, No. 1:04 CV 829, 2021 WL 4477882, at *74 (N.D. Ohio Sept. 30, 2021) (citing

*Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005); *Frazier v. Huffman*, 343 F.3d 780, 789

(6th Cir. 2003)). Here, the Eighth Appellate District reasonably concluded that the

photographs were probative of the nature of the victim's wounds and the manner of his death:

> A gruesome photograph is admissible only if its probative value outweighs the danger
> of prejudice to the defendant. *State v. Ford*, 2019-Ohio-4539, ¶ 237, citing *State v.*
> *Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 96. Here, Jose's
> autopsy photos, although gruesome, served to illustrate the testimony of Felo, the
> Medical Examiner who testified as to the nature of Jose's wounds and his manner of
> death. Therefore, we do not find plain error in their admission. Garcia-Toro's fifth
> assignment of error is overruled.

(ECF No. 6-1, Exhibit 30, ¶ 38).

Thus, even assuming that the admission of gruesome photographs could render a trial

fundamentally unfair, the Eighth Appellate District's determination was not contrary to, or an

unreasonable application of, clearly established Supreme Court precedent in this instance. I

therefore alternatively recommend that the Court deny Mr. Garcia-Toro's fifth ground for

relief on the merits.

### G.  Ground Six: Ineffective Assistance of Counsel

In Ground Six, Mr. Garcia-Toro argues that his trial counsel made a number of errors

that denied him the effective assistance of counsel in violation of the Sixth Amendment. As

noted above, a petitioner claiming ineffective assistance of counsel must show that: (1)

counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 688. Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

Here, Mr. Garcia-Toro argues that his trial counsel was ineffective in: (1) representing him despite the presence of a conflict in light of their representation of other potential suspects; (2) as a result of the conflict, failing to issue subpoenas to those suspects or to ask probing questions of other witnesses; (3) failing to object to questions regarding the timing of his notice of alibi; (4) failing to object to the authenticity of the Gabriel Ruiz Facebook records or the alleged other acts evidence contained in those records; (5) failing to object to the alleged hearsay statements made by his sister; and (6) failing to object to the introduction of the autopsy photos.

Mr. Garcia-Toro raised the same arguments before the Eighth Appellate District, which addressed them on the merits. Where, a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

> *Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

In rejecting Mr. Garcia-Toro's ineffective assistance claim, the Eighth Appellate District held as follows:

> {¶ 43} In his sixth assignment of error, Garcia-Toro argues that he received ineffective assistance of counsel. In support of this assignment of error, he reiterates his arguments from the foregoing assignments of error, arguing that his counsel was ineffective for (a) representing Garcia-Toro in spite of an alleged conflict of interest; (b) failing to object to allegedly improper alibi questions the prosecutor asked the detective; (c) failing to object to the authenticity of the Facebook records; (d) failing to object to alleged hearsay testimony; (e) failing to object to the admission of photos of Reyes; and (f) failing to object to the imposition of consecutive sentences. Further, Garcia-Toro argues that the cumulative effect of these errors deprived him of a fair trial.

> {¶ 44} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness and that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 687-688.

{¶ 45} In deciding a claim of ineffective assistance, reviewing courts indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance, and defendants must therefore overcome the presumption that the challenged action might be considered sound trial strategy. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland*.

{¶ 46} Because we found no error regarding any of counsel's allegedly deficient conduct, we cannot conclude that Garcia-Toro's counsel was deficient. Therefore, he has failed to establish the first prong of the *Strickland* test, and his claim for ineffective assistance of counsel necessarily fails. Garcia-Toro's sixth assignment of error is overruled.

(ECF No. 6-1, Exhibit 30).

Applying the double layer of deference under AEDPA, the Eighth Appellate District did not err in rejecting Mr. Garcia-Toro's *Strickland* claim. As set forth above, the Eighth Appellate District did not violate clearly established Supreme Court precedent in concluding that Mr. Garcia-Toro's counsel was not under an actual conflict of interest that prejudiced Mr. Garcia-Toro. The Eighth Appellate District also did not violate clearly established Supreme Court precedent in holding that admission of the notice of alibi was harmless; that the Gabriel Ruiz Facebook account was properly authenticated and did not contain impermissible "other acts" evidence; that the testimony of Ms. DeJesus did not constitute impermissible hearsay; or that the autopsy photographs were properly admitted. The Eighth Appellate District therefore reasonably concluded that the conduct of Mr. Garcia-Toro's counsel did not fall outside an objective standard of reasonableness. Accordingly, I recommend that the Court deny Mr. Garcia-Toro's sixth ground for relief.

### H.  <u>Ground Seven: Sufficiency of the Evidence</u>

In Ground Seven, Mr. Garcia-Toro alleges that his convictions violate the Fourteenth

Amendment because there was insufficient evidence that he committed any of the charged offenses. In particular, Mr. Garcia-Toro argues that the evidence against him was "weak" because there was no physical or forensic evidence, no eyewitnesses, no confession, and a weak motive. (ECF No. 10 at 48).

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Review of sufficiency of the evidence challenges involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). "First, [a court] must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were [a court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [a court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown,* 567 F.3d at 205). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir.

2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the Eighth Appellate District rejected Mr. Garcia-Toro's sufficiency of the evidence claim on the merits:

> {¶ 48} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> {¶ 49} Garcia-Toro emphasizes the absence of any eyewitness evidence or physical evidence that he was the shooter. Neither physical evidence nor eyewitness testimony is required to establish a defendant's guilt beyond a reasonable doubt. Ohio courts have consistently held that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988), citing *State v. Kulig*, 37 Ohio St.3d 157, 309 N.E.2d 897 (1974); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), cert. denied *Hankerson v. Ohio*, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130 (1982). Circumstantial evidence is equally probative as direct evidence. *Id.*, citing *State v. Griffin*, 13 Ohio App.3d 376, 377, 469 N.E.2d 1329 (1st Dist.1979).

> {¶ 50} Here, multiple witnesses testified that Garcia-Toro had admitted to killing Jose, and that these statements included details about what Jose was doing when he was killed and how exactly he was killed. These statements correspond with Efrain's account of the events. Additionally, the suspect appearing in video footage of the area near the murder immediately following matched the description given by Efrain and was identified at trial by other witnesses as Garcia-Toro. Viewing this evidence in the light most favorable to the state, sufficient evidence was presented to support Garcia-Toro's convictions. Therefore, his eighth assignment of error is overruled.

(ECF No. 6-1, Exhibit 30).

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, I agree that a rational trier of fact could have found the essential elements of the relevant offenses beyond a reasonable doubt given the witnesses who testified that he admitted to committing the crimes.

And even if I had concluded (which I do not) that a rational trier of fact could not have

found Mr. Garcia-Toro guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above. I therefore recommend that the Court deny Mr. Garcia-Toro's petition with respect to Ground Seven.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B. <u>Analysis</u>**

Mr. Garcia-Toro has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII. RECOMMENDATION**

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Garcia-Toro's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  September 25, 2023                    *s/Jennifer Dowdell Armstrong*
                                              Jennifer Dowdell Armstrong
                                              U.S. Magistrate Judge


**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of**

**good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79

44

(6th Cir. 2019).